IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**ANITRA R. TURNER**                                                                                  **PLAINTIFF**

**VERSUS**                                                            **CIVIL ACTION NO. 2:06cv227KS-MTP**

**WAL-MART STORES EAST, L.P., and**
**WAL-MART STORES EAST, INC.**                                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Motion for Summary Judgment **[#22]** and Motion to Strike **[#37]** filed on behalf of the defendants. The court, having reviewed the motions, the responses, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motions are not well taken and should be denied. The court specifically finds as follows:

## FACTUAL BACKGROUND

On Saturday, August 28, 2004, the plaintiff, her husband, F.M. Turner, III, (who is also her attorney), and their two sons, Joshua and Caleb, were shopping in Wal-Mart's Hattiesburg, Mississippi, store located on Highway 98. The store is owned and operated by Wal-Mart Stores East, L.P. According to the plaintiff, she was in the store to gather some items for a church youth group function scheduled for the following day. After gathering items from the grocery section, the four were walking toward the front of the store to check out. The plaintiff and her son Caleb, who was pushing a grocery

cart, were side-by-side with Caleb on the left. The plaintiff's husband and Joshua were side-by-side behind the plaintiff and Caleb. As the four were traveling to the cashier area to check out, the plaintiff decided to turn right in front of a stand-alone fruit stand near the front aisle of the store to go to the nearby candy area. As she turned, she stepped in a puddle of water, slipped and fell.

After the fall, Wal-Mart personnel including Chad Sumrall, an assistant manager, were summoned and an ambulance was called for the plaintiff. According to the plaintiff, while the ambulance was en route, Wal-Mart personnel stood around her to "shield" her from the shopping public. While the plaintiff was waiting for the ambulance with her husband, two friends, Beverly Garrity and Janet Fore, noticed her and came to her aid. As a result of the fall, the plaintiff suffered a significant knee injury.

The plaintiff filed suit in the Circuit Court of Lamar County, Mississippi, on August 29, 2006. The defendants were served notice of the suit on or about September 6, 2006, and timely removed the action to this court under the auspices of 28 U.S.C. §§ 1441 and 1446 asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. Finding complete diversity of citizenship of the parties and that the amount in controversy exceeds the sum of $75,000.00, the court has jurisdiction over the subject matter and the parties.

The parties have completed discovery and the defendants have filed the present motion for summary judgment on the basis that there is no genuine dispute of any material issue concerning the liability of the defendants to the plaintiff. Specifically, the defendants contend that on the date in question, Wal-Mart had in place procedures, specifically "Safety Sweeps" conducted every hour, designed to detect and remedy

potential slip-and-fall hazards. They further contend that because there is no evidence as to how long the water had been on the floor or the source of the water, and Wal-Mart had in place procedures followed on the evening in question and designed to detect the presence of water upon which patrons may slip, no negligent act of Wal-Mart proximately caused or contributed to the plaintiff's injuries.

In response, the plaintiff contends that a genuine issue of material fact exists as to whether the defendants knew, or in the exercise of reasonable care should have known, of the presence of the water on the floor in which the plaintiff slipped and fell. The plaintiff further asserts that actual or constructive knowledge of such a condition renders the defendants liable in the absence of a warning to, or prior knowledge by, the plaintiff of the dangerous condition or action taken by the defendants to protect the plaintiff from the condition.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his

motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the]

court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **PREMISES LIABILITY IN MISSISSIPPI**

To prevail in the plaintiff's negligence claim, she must prove by a preponderance of the evidence the following elements:

1. A duty owed by the defendants to the plaintiff;
2. A breach of that duty;
3. Damages; and
4. A causal connection between the breach and the damages, such that the breach is the proximate cause of the damages.

*Grisham v. John Q. Long V.F.W. Post*, 519 So. 2d 413, 416 (Miss. 1988).

The defendants' motion has challenged the plaintiff's negligence claim generally and the plaintiff's ability to prove a breach of duty by the defendants, specifically.  The court notes that in order for the plaintiff to prevail against the defendants' challenge by the defendants' Motion for Summary Judgment, she must make a showing sufficient to establish the existence of the defendants' breach of duty on which she will bear the burden of proof at trial.  See *Celotex Corp. v. Catrett*, 477 U.S. at 322.

Because this court has original jurisdiction of this civil action via complete diversity of citizenship of the parties under 28 U.S.C §1332(a)(1), Mississippi law controls substantive issues.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-80, 58 S.Ct. 817, 82 L.Ed. 1188 (1934); *Huss v. Gayden*, 465 F.3d 201, 205-06 (5th Cir. 2006).  Under

Mississippi law an owner, occupant or person in charge of a premises owes a business invitee the duty to keep the premises in a reasonably safe condition or to warn the invitee of dangerous conditions, not readily apparent, which the owner or occupier knows of or should know of in the exercise of reasonable care.  *Waller v. Dixieland Food Stores, Inc.*, 492 So. 2d 283 (Miss. 1986).  Further, when a dangerous condition on the business premises is caused by the owner's or occupier's own negligence, no knowledge of its existence need be shown.  However, when a dangerous condition on the business premises is caused by third persons unconnected with the store, the burden is upon the non-moving party to show the owner or occupier had actual or constructive knowledge of the condition.  *Jerry Lee's Grocery, Inc. v. Thompson*, 528 So. 2d 293 (Miss. 1988)(*citing Waller*, *supra*).

Constructive knowledge is established by proof that the condition existed for such a length of time that, in the exercise of reasonable care, the owner or occupier should have known of it.  *Douglas v. Great Atlantic and Pacific Tea Company*, 405 So. 2d 107,120 (Miss. 1981); *Mississippi Winn-Dixie Supermarkets, Inc. v. Hughes*, 247 Miss. 575,584, 156 So. 2d 734,736 (1963).  Regarding the passage of time and constructive notice, the Mississippi Supreme Court has stated:

> It does not follow that because the store opened at 8:00, that at precisely that time some person threw a dark object on the floor.  It is just as logical to assume that the object was thrown there two or three minutes before she stepped on it, and such presumption is not sufficient to sustain a recovery on the theory that the object had been placed there or remained there for a sufficient length of time so that appellee, by the exercise of reasonable care, should have known of the dangerous commission and removed the object from the floor.

*Aultman v. Delchamps*, 202 So.2d 922, 924 (Miss. 1967); *See also Waller v. Dixieland*

*Food Stores, Inc.*, 492 So.2d at 296.  Thus a mere lapse of time between when the floor around the injury site was surveyed for hazards and when the plaintiff fell is insufficient, in and of itself, to prove constructive notice*. See, Mergendahl v. C.J. Gayfer and Company, Inc.*, 659 F.Supp. 351 (S.D. Miss. 1987).

Further, "[t]he fact that the Plaintiff suffered injuries as a result of a slip-fall on the Defendant's premises is not decisive to the issue of whether the Defendant committed a negligent act.  The premises' owner is not considered the insurer of the safety of its invitees*." Dickens v. Wal-Mart Stores, Inc.*, 841 F.Supp. 768, 770 (S.D.Miss.1994) (quoting *Kroger, Inc. v. Ware*, 512 So.2d 1281, 1282 (Miss.1987)).

## **ANALYSIS**

Wal-Mart's internal policy calls for all associates to conduct periodic safety sweeps and also to be alert for potential hazards, including spills on floors, and to take action as soon as hazards are seen.  These policies include specific safety sweeps at periodic intervals, but also continuing surveillance for hazards, referred to as the "clean-as-you-go" method, even counseling taking different routes to and from lunch and breaks to help minimize hazards.  According to the affidavits of Wal-Mart employees Chad Sumrall and Margie Stinson, safety sweeps were conducted approximately hourly; and were conducted on the evening in question.  However, the defendants kept no record showing that the safety sweeps were conducted on August 28, 2004.

The location of the accident was in the highly traveled area of the store immediately adjacent to the checkout registers and close to a customer service

manager's station known as the "front action alley."  In support of their motion, the defendants submitted the affidavit of Josephine Hubbard, a Wal-Mart employee who was working on the evening of August 28, 2004.  In addition to her affidavit, the defendants also produced a handwritten statement of Ms. Hubbard written immediately after the events on August 28.

According to Ms. Hubbard, she and another employee, Veronica Pruitt, were walking together by the produce section talking, when Ms. Hubbard saw Donna Leggett, a customer service manager, standing at the manager's station or podium located a short distance from and in plain sight of the area where the plaintiff was injured.  Ms. Hubbard called to Leggett that she needed to talk to her and walked past the produce display where the plaintiff was injured to the manager's station.

According to her statement, Ms. Hubbard walked "right passed (sic) produce walking really fast past the peaches or nectarines up front in grocery action alley."  She reached the podium as someone asked Leggett to page a customer and as soon as that was accomplished, Ms. Pruitt called to them that a customer (the plaintiff) had fallen.  Hubbard also stated that "she had walked through like a minute before" the plaintiff fell and did not see water on the floor.  After being told of the plaintiff's fall, Ms. Hubbard walked back to where the plaintiff was lying on the floor and saw the puddle of water on the floor.

The assistant manager, Chad Sumrall, was called to the scene and he has testified that the puddle was approximately one foot in diameter.  The defendants contend that there is disputed evidence as to whether the puddle was "dirty" or not.  No one other than the plaintiff's husband and counsel, in his affidavit, has indicated that the

puddle was other than clear water. Mr. Turner's affidavit is the subject of the motion to strike as dealt with below . The defendants hotly defend their conclusion that the puddle was not dirty or tracked up.

The court has reviewed all of the evidence submitted and the most that can be said regarding the condition of the puddle as anything but clear water is gained from the affidavit of Mr. Turner. He stated that there was sand and grit in the water but no one has said there were footprints or other evidence that the puddle had been traversed by others. So while the parties hotly dispute the condition of the puddle, the court views it as an issue with little traction. It is clear that the puddle was not dirty or smeared by other footprints, only that it may or may not have had sand or grit present in it, which in a highly traveled area of a Wal-Mart would not seem like an unusual phenomenon. Thus, while the cleanliness of a liquid spill may impact the determination of length of time of its existence, the cleanliness of the puddle is certainly not a determinative factor in the court's analysis of summary judgment in this particular case.

However, from the statement and affidavit of Ms. Hubbard, the plaintiff contends that it is clear that Ms. Hubbard, and perhaps Ms. Pruitt, had been in a position to see the water on the floor prior to the plaintiff's fall, but had not seen it because they had passed through the area so quickly and were focused on Ms. Legget at the customer service podium. From this failure to see the hazard, the plaintiff surmises that it is also clear that neither Hubbard nor Pruitt were looking for slipping hazards on the floor when they went through the area, so that their failure to observe the spill cannot be interpreted to mean that there was none, only that they did not see it.

There is no evidence that the defendants placed the puddle of water on the floor

where the plaintiff fell.  Thus, the plaintiff must offer proof which creates a genuine issue of fact that the water was on the floor for such a period of time that the defendants should have known of its presence, creating constructive notice of the hazard.  The defendants argue that no such proof has been presented, i.e., that the plaintiff has not even attempted to show the length of time the water was on the floor.  The plaintiff's failure to do this, according to the defendants, is fatal to her case.

However, what the plaintiff has shown is that it had rained a considerable amount on the day of her fall; that a puddle of water at least one foot in diameter had accumulated on the floor of defendants' store under a skylight in a highly traveled area; and that two Wal-Mart employees, walking quickly and focusing on the customer service podium, passed by within a very short distance of the puddle approximately one minute before the plaintiff's fall without seeing anything.  The fact that the employees didn't see the puddle may indicate that it wasn't there.  However, the fact that the puddle was of such a size and in the place where it was coupled with the employees' rapid transit by the area creates a genuine issue as to whether they should have seen it.

By opening their store to the public, the defendants have taken upon themselves the obligation of keeping their premises free of obvious hazards or to warn of them.  The law of premises liability has developed to the point that it is next to impossible for one injured in a slip and fall accident to prove negligence on the part of the owner.  However, it is still a question of negligence that must be answered.  Is it more likely than not that the defendants acted of failed to act in a way that caused or contributed to the plaintiff's injuries?  In this case, based on the evidence presented, the court cannot

11

answer that question as a matter of law. The plaintiff has offered proof of a genuine issue of material fact that requires resolution by the trier of fact. Summary judgment is thus inappropriate.

## OTHER ISSUES

### Missing Video Tape?

There are two other issues that require the attention of the court. The first is the question of the admissibility of the evidence concerning whether a video tape of the plaintiff's fall exists. The issue has been argued to and decided by the Magistrate Judge in a motion to compel production of the alleged video tape by the plaintiff. That production was denied as the defendant has responded numerous times that no such tape exists.

The plaintiff's traction for this argument comes from Chad Sumrall, the assistant manager on duty at the time of the plaintiff's fall. Sumrall has stated that he requested another Wal-Mart employee to pull the video tape of the incident and send it to loss prevention, as is required by Wal-Mart corporate policy. The plaintiff also argues that at least five video cameras were positioned within line of sight of the her fall and that at least one or more of these had to be trained in the direction of the plaintiff's fall as it was such a high traffic area. Nevertheless, the defendants continue to maintain that no video tape of the incident ever existed and thus cannot be produced.

In light of the lack of existence or production of any video tape of the incident, the plaintiff argues for a negative inference that such is "willful concealment or

spoliation of admissible evidence and should give rise to adverse inferences concerning the Defendants' Motion for Summary Judgment." Now is not the time to decide that issue. The existence of a video tape of the incident, or the lack thereof, has not entered into the equation in the present decision. It is an evidentiary matter for the trial.

### Motion to Strike/Removal of Plaintiff's Counsel

The other matter that must be addressed by the court is the defendants' Motion to Strike **[#37]** the affidavit of the plaintiff's husband and attorney. In support of the motion, the defendants point to Rule 3.7 of the Mississippi Rules of Professional Conduct, which states:

> a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> > (1) the testimony relates to an uncontested issue;
> >
> > (2) the testimony relates to the nature and value of legal services rendered in the case; or
> >
> > (3) disqualification of the lawyer would work substantial hardship on the client.

The plaintiff's counsel does not dispute that none of the exceptions apply in this case. Instead, he argues that the present proceeding is not "at trial." The defendants counter that they have not received adequate discovery responses because they were working under the assumption that Mr. Turner would not be a witness and were not aware of anything to the contrary until Mr. Turner filed his affidavit in support of his Wife's response to the summary judgment.

The court has reviewed the discovery questions and responses and concludes

that, at the least, Mr. Turner was cagey in his responses but was not totally unresponsive. They do reflect a clear assumption, unwarranted in retrospect, on the part of counsel for Wal-Mart that Mr. Turner would not be a witness in this matter.

As far as consideration of Mr. Turner's affidavit in resolving the present summary judgment motion, the court considers it largely cumulative to other evidence provided and did not base its decision on any singular evidence provided by Mr. Turner alone. That said, Mr. Turner may not proceed to trial as counsel for his wife since he has injected himself as a witness in the case. To do so would violate Rule 3.7. The plaintiff shall advise the court within ten days of this order as to the substitution of counsel. Further, the court will reopen discovery solely for the purpose of ordering Mr. Turner to submit himself for deposition prior to trial, if the defendants so choose. To the extent the court needs to reconsider this entire issue at or during trial, it reserves the right to do so.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#22]** filed on behalf of the defendants is Denied and that the defendants' Motion to Strike **[#37]** the affidavit of the plaintiff's husband and attorney, F.M. Turner, III, is Denied.

IT IS FURTHER ORDERED AND ADJUDGED that F.M. Turner, III, shall remove himself as attorney for the plaintiff and that the plaintiff shall advise the court within ten days as to who new counsel shall be.

IT IS FURTHER ORDERED AND ADJUDGED that the court shall reopen discovery in order for the defendants to depose F.M. Turner, III, prior to trial, if they so

desire.

SO ORDERED AND ADJUDGED this the 26th day of September, 2007.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE